UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FKFJ, INC., INTERNATIONAL REALTY INVESTMENTS LLC, ISAM SAMARA, and MUWAFAK S. RIZEK,<br><br>Plaintiffs,<br><br>v.<br><br>VILLAGE OF WORTH, MARY WERNER, MARK MICETICH, VILLAGE OF WORTH POLICE OFFICER #207, #208, #210, #213, #223, #224, #227, #234, and UNKNOWN VILLAGE OF WORTH POLICE OFFICERS,<br><br>Defendants. | No. 18 C 2828<br><br>Judge Jorge Alonso |

## ORDER

Defendants' motion to dismiss [41] is granted in part and denied in part. Plaintiffs' tortious interference with contract and conversion claims are dismissed to the extent they depend on the Village's failure to issue a permit or license. The motion is otherwise denied. Status hearing previously set for 2/6/19 is stricken and reset to 8/8/19 at 9:30 a.m.

## STATEMENT

Plaintiffs, Isam Samara, Muwafak Risek, their business entity FKFJ, Inc. ("FKFJ"), and International Realty Investments LLC ("International Realty"), bring this suit against the Village of Worth, its president Mary Werner, its Chief of Police Mark Micetich, and numerous known and unknown police officers. Plaintiffs assert various claims pursuant to 42 U.S.C. § 1983 and state law, all stemming from defendants' alleged harassment of plaintiffs in retaliation for Samara and Rizek's support for a political rival of Werner's. Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I. Background

According to the allegations of the complaint, Samara and Rizek formed FKFJ in June 2016 for the purpose of setting up and operating two businesses, a restaurant and a hookah lounge, in two buildings next door to one another in Worth, Illinois. They had no trouble acquiring the necessary permits and licenses, and they opened for business the following month. International Realty owned a single-family home next door to the hookah lounge, and FKFJ and International Realty entered into an agreement to allow customers to park in the space behind the home, off the rear alley. Werner encouraged Samara to demolish the home so FKFJ's businesses could use the lot for parking, assuring him the process of applying for the necessary permit would be "easy and quick." (Compl. ¶ 19, ECF No. 1.) International Realty agreed to allow FKFJ to demolish the home, and FKFJ submitted the permit application.

During this time, Samara and Rizek began to publicly support Randy Keller in his political campaign to replace Werner as village president, hosting campaign events for him and donating to his campaign. Werner's manner toward plaintiffs turned hostile, and in January 2017, three months after FKFJ had submitted the permit application, Werner informed Samara that he had not paid all the requisite fees, although he believed he had paid all the fees asked of him at the time of filing. Samara paid the outstanding fee, and the Village ultimately issued the permit after about two more months, six months after the initial application. Werner was reelected.

In May 2017, FKFJ sought a special use permit so it could surface the lot for parking, but the permit was not immediately approved. Although the matter was promptly added to the meeting agenda of the Village's Board of Trustees, it did not receive a vote for more than three months. During that time, the defendant officers, among others, began issuing hundreds of parking citations to FKFJ for vehicles parked in the empty lot or on nearby streets, although these vehicles belonged

to FKFJ's customers, not FKFJ itself, and prior to this time, FKFJ had never received any such citations. The parking situation directly affected FKFJ's business, which dwindled while the special use application remained pending. Additionally, unknown Worth police officers twice entered the restaurant and arrested Rizek, without a warrant or probable cause.

Even after the special use application was approved in October 2017, FKFJ and International Realty continued to receive citations for not having a parking lot license or other alleged violations of the Village Code. When an attorney attempted to renew the business licenses for the restaurant and hookah lounge, he was "denied the opportunity to file for renewal." (Compl. ¶ 41.) Exasperated, FKFJ sold the restaurant. The new owner received a business license promptly, but only after Werner "made [him] promise that he has no affiliation with Plaintiffs Samara or Rizek." (*Id.* ¶ 43.)

## II.     Legal Standards

A motion under Federal Rule of Civil Procedure 12(b)(6) tests whether the complaint states a claim on which relief may be granted. *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "'give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Under federal notice-pleading standards, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

3

*Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts must] accept the well-pleaded facts in the complaint as true, but [they] 'need[ ] not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

### III. Analysis

In support of their motion to dismiss, defendants argue that (a) plaintiffs do not state a valid § 1983 claim against the Village of Worth or Mary Werner in her official capacity under *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978); (b) plaintiff's state-law claims are barred by the Illinois Tort Immunity Act, 745 ILCS 10/1-101 *et seq*; and (c) and plaintiffs do not plead sufficient factual matter to meet federal pleading standards with respect to any of their claims.

#### A. Monell *claims against Village of Worth and Mary Werner*

Under *Monell*, "[a] village or other municipality may be found liable under § 1983 when it violates constitutional rights via an official policy or custom." *Wragg v. Vill. of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). "To establish an official policy or custom, a plaintiff must show that his constitutional injury was caused 'by (1) the enforcement of an express policy of the [village], (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority.'" *Id.* (quoting *Latuszkin v. City of Chi.,* 250 F.3d 502, 504 (7th Cir.2001)). "Final policymaking authority may be granted directly

by statute or delegated or ratified by an official having policymaking authority." *Kujawski v. Bd. of Comm'rs of Bartholomew Cty., Ind.*, 183 F.3d 734, 737 (7th Cir. 1999). Suing a municipal official in her "official capacity" is "effectively the same as having brought suit against" the municipal entity she represents. *Holloway v. Del. Cty. Sheriff*, 700 F.3d 1063, 1071 (7th Cir. 2012) (citing *Monell*, 436 U.S. at 690 n.55).

Plaintiffs assert six claims pursuant to § 1983, claiming violation of their (1) First Amendment rights, in retaliation for political activity; (2) Fourteenth Amendment equal protection rights; (3) Fourteenth Amendment procedural due process rights, (4) Fifth Amendment right to just compensation for taking of private property; and (5) Fourth Amendment right to be free from unreasonable seizures, respecting Rizek's arrests; as well as (6) a conspiracy to violate these rights. Plaintiffs expressly assert all of these claims against the "Village of Worth" and "Mary Werner, individually and in her official capacity."[1] Defendants argue that plaintiffs' claims, as pleaded, do not meet the standard set by *Monell*. Plaintiffs respond that their § 1983 claims do meet the *Monell* standard because defendant Werner, as village president, has final policymaking authority "for licensing and policing." (Pl.'s Mem. in Opp'n at 8-9, ECF No. 48.)

"A person's status as a final policymaker under § 1983 is a question of state or local law." *Kujawski*, 183 F.3d at 737. As the Seventh Circuit explained in another case involving a zoning issue, under Illinois law, it is generally a village's board of trustees, not its president, that holds final policymaking authority:

> Under Illinois law, it is the "corporate authorities" that have authority concerning zoning policy and enforcement. 65 ILCS 5/11–13–1. "Corporate authorities" include "the president and trustees or similar body when the reference is to villages or incorporated towns." 65 ILCS 5/1–1–2. Nevertheless, it appears that the president has only tie breaking authority, veto power (which can be overridden), and the power to "recommend . . . measures the . . . president believes expedient."

---

[1] The Fourth Amendment claim is also asserted against other defendants, namely Mitch Micetich, the Chief of Police, and the unknown police officers who arrested Rizek.

> 65 ILCS 5/3.1–35–5, 5/3.1–45–5, 5/3.1–40–30. In general, the president's responsibilities are to "perform all the duties which are prescribed by law, including ordinances, and shall take care that the laws and ordinances are faithfully executed." 65 ILCS 5/3.1–35–5. By contrast, the board of trustees has the authority to "pass ordinances, resolutions, and motions in the same manner as a city council." 65 ILCS 5/3.1–45–5. Generally, a person holding only executive power does not have policymaking authority for purposes of § 1983; rather, the policymaking authority in the city structure will be the city council, or here, the Board of Trustees. *See Auriemma* [*v. Rice*, 957 F.2d 397, 399-400 (7th Cir. 1992)].

*Rasche v. Vill. of Beecher*, 336 F.3d 588, 600-01 (7th Cir. 2003). This is not to say that a village's "board of trustees, [rather than] the president, is the final policymaker on *every* policy decision." *Wragg v. Vill. of Thornton*, 604 F.3d 464, 468-69 (7th Cir. 2010). Instead, on a case-by-case basis, courts must "look to various factors in determining whether a certain individual or group has policymaking authority on any *particular* policy decision," including "(1) lack of 'constrain[ts] by policies' made by others; (2) lack of 'meaningful review'; and (3) a 'grant of authority' to make the policy decision." *Id.* (quoting *Valentino v. Vill. of S. Chi. Heights*, 575 F.3d 664, 676 (7th Cir. 2009)).

Neither side engages in the analysis of the Illinois Municipal Code or the Worth Village Code necessary to resolve the question of the extent of Werner's policymaking authority—a troubling deficiency, because it is not this Court's job to "manufacture [the parties'] argument[s] for them." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011) ("Neither the district court nor this court are obliged to research and construct legal arguments for parties, especially when they are represented by counsel."). Resolving the question at this early stage might be premature, in any case, because it may turn on issues of fact, such as whether the Board of Trustees delegated policymaking authority or ratified decisions of Werner or other village officials. *See Kujawksi*, 183 F.3d at 739 (finding genuine factual dispute as to whether board delegated policymaking authority over community corrections matters to the county's chief probations officer). At this

point, it is enough to note that plaintiffs allege that the Board of Trustees was directly involved in a key aspect of plaintiffs' alleged ordeal: for months it delayed approval of the special use permit plaintiffs needed to surface their parking lot, allowing the item to linger on its agenda at meeting after meeting while plaintiffs continued to receive "hundreds" of citations. (Compl. ¶ 31; *see id.* ¶¶ 31-38.) This allegation makes plaintiffs' *Monell* claim plausible even if it depends not only on discrimination stemming from Werner's grudge but also on the Board of Trustees ratifying the misconduct and participating in it. *See Greene v. Cook Cty. Sheriff's Office*, 79 F. Supp. 3d 790, 811-12 (N.D. Ill. 2015); *Tarvin v. Bd. of Educ. of East St. Louis Dist. No. 189*, No. 09 C 655, 2010 WL 11565128, at *3 (S.D. Ill. Nov. 22, 2010); *cf. Baskin v. City of Des Plaines*, 138 F.3d 701, 705 (7th Cir. 1998) ("[A] plaintiff seeking to establish a § 1983 claim against a municipality based on a 'ratification' theory must allege that a municipal official with final policymaking authority approved the subordinate's decision and the basis for it."); *Harris v. Kruger*, No. 13-CV-8584, 2015 WL 4971888, at *4 (N.D. Ill. Aug. 19, 2015) (*Monell* claim related to conspiracy in police officers' misconduct may survive motion to dismiss if it "extended beyond them" because someone with "final policymaking authority ratified [the misconduct]"). Plaintiffs have sufficiently alleged that they suffered a constitutional injury caused or ratified by someone with final policymaking authority, so they state a valid § 1983 claim against the Village of Worth under *Monell*.

Based on the scanty briefing the parties have provided, the Court can go no further. Even if there are deficiencies in plaintiffs' complaint that might justify dismissing one § 1983 claim or another, defendants do not make claim-by-claim arguments against them, and again, the Court will not "manufacture [defendants'] arguments for them." *Nelson*, 657 F.3d at 590. Defendants' motion to dismiss plaintiffs' *Monell* claims is denied.

7

### B. *Illinois Tort Immunity Act*

Plaintiffs assert numerous claims under state law, including the following: (1) tortious interference with contract, for failing to timely issue the licenses and permits that plaintiffs needed to stay in business; (2) false imprisonment and abuse of process, for Rizek's arrests; (3) malicious prosecution, for the barrage of municipal citations plaintiffs received; and (4) conversion, for preventing plaintiffs from using their property to operate a business by issuing frivolous citations and failing to timely issue necessary permits and licenses. Defendants argue that plaintiffs' state-law claims are barred by the Illinois Tort Immunity Act.

Defendants acknowledge that, while public employees are generally immune from liability for any "act or omission in the execution or enforcement of any law," there is an exception for any "such act or omission [that] constitutes willful or wanton conduct." 745 ILCS 10/2-202. Defendants assert that plaintiffs have not alleged any willful or wanton conduct. The Tort Immunity Act defines "willful and wanton conduct" as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210. Plaintiffs allege, in summary, that the Village of Worth harassed plaintiffs by denying them permits and licenses and issuing bogus citations in an effort to harm their business in retaliation for supporting a political rival of the village president. Such conduct falls squarely within the bounds of willful and wanton conduct, according to the Tort Immunity Act's definition. Defendants cite no cases to the contrary.

However, defendants also state that "[a] local public entity is not liable for an injury caused by the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order or similar authorization where

the entity or its employee is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked." 745 ILCS 10/2-104. Plaintiffs do not address this provision, which, unlike 745 ILCS 10/2-202, has no exception for willful and wanton misconduct. *See Bloomingdale v. C.D.G. Enters.*, 752 N.E.2d 1090, 1099 (Ill. 2001). Because the immunity provided by section 2-104 is absolute, defendants' motion is granted with respect to plaintiffs' tortious interference with contract and conversion claims, which are dismissed to the extent they depend on the Village's failure to issue a permit or license.

### C. *Failure to plead sufficient facts*

Defendants contend that plaintiffs' remaining claims do not meet federal pleading standards because they are not "specific or cohesive enough," the allegations "fail to provide enough of a factual foundation," and the conclusion that defendants' actions were unlawful is "mere speculation." (Defs.' Mem. at 4, *see also id.* at 5, ECF No. 43.)

The Court disagrees. While there are undoubtedly certain gaps in plaintiffs' allegations, plaintiffs are not required to prove their claims in their complaint; the claims need only be plausible. *Lippert v. Godinez*, No. 13 C 1434, 2014 WL 540415, at *2 (N.D. Ill. Feb. 11, 2014) (citing *Iqbal*, 556 U.S. at 678). Despite the gaps, plaintiffs have plausibly alleged that the Village harassed them and treated them differently from other residents in retaliation for their support of the village president's political rival. Assuming the truth of the allegations, a reasonable jury could infer that the alleged harassment—the flood of citations and the delays in issuing permits and licenses—was connected to the election based on its suspicious timing, as it seemed to begin shortly after Werner's reelection, and also based on Werner's issuing a license to the new owner of plaintiffs' businesses on the condition that he promise "that he has no affiliation with Plaintiffs Samara or Rizek." *See Geinosky v. City of Chi.*, 675 F.3d 743, 749 (7th Cir. 2012) ("The complaint

9

clearly tells a story in which [the plaintiff] was targeted. Reason and common sense provide no answer to why he was targeted that could be considered a legitimate exercise of police discretion.").

Further, as the Court has already explained above with respect to the § 1983 claims, even if there are deficiencies in plaintiffs' complaint that might justify dismissing one claim or another, defendants do not articulate reasoned arguments, backed by pertinent authority on a claim-by-claim basis, in support of dismissal, and the Court will not "manufacture their arguments for them." *Nelson*, 657 F.3d at 590. Plaintiffs have filed an eighteen-page response brief in which they address the pleading burden for each claim, citing pertinent authority, but defendants' reply does little more than recycle the bare arguments in their opening brief. Defendants were required to do more to obtain dismissal. *See Pelfresne v. Vill. of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point."). Defendants' arguments are perfunctory and undeveloped, and therefore they forfeit them. Defendants' motion to dismiss for failure to meet federal pleading standards is denied.

**SO ORDERED.**                                                **ENTERED: January 22, 2019**

                                                                                     **HON. JORGE ALONSO**
                                                                                     **United States District Judge**