IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FKFJ, INC., ISAM SAMARA, and MUWAFAK S. RIZEK, <br><br>Plaintiffs, <br><br>v. <br><br>VILLAGE OF WORTH, MARY WERNER as Village President, MARY WERNER, Individually, MARK MICETICH as Chief of Police, VILLAGE OF WORTH POLICE OFFICERS #207, #208, #210, #213, #223 #224, #227, #234, and UNKNOWN VILLAGE OF WORTH POLICE OFFICERS <br><br>Defendants. | No: 18-CV-2828 <br><br>Honorable Jorge L. Alonso <br><br>Magistrate Judge Jeffrey T. Gilbert |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGEMENT**

NOW COMES the Defendants, VILLAGE OF WORTH, MARY WERNER as Village President and individually, and VILLAGE OF WORTH POLICE OFFICERS #207, #208, #210, #213, #223, #224, #227, #234 (collectively "Village of Worth" unless otherwise indicated), by and through their attorney, Charles R. Vogt of PATTON & RYAN, LLC., and in support of their Motion for Summary Judgement, state as follows:

**Introduction**

A disgruntled business owner cannot seek recourse through the federal courts because a village simply upheld its ordinances. That is what this case is about. Plaintiffs allege that Defendants conspired to put them out of business through allegedly delaying their permit for a parking lot and issuing hundreds of tickets to patrons. Rizek further alleges a litany of claims

1

surrounding his arrest for unlawful deceptive practices. Not surprisingly, then, Plaintiffs have no evidence to support their allegations.

## Background

In January of 2016, Samara and Rizek made the decision to remodel their existing property and then reopen it as Saraya Restaurant & Banquet. (Statement of Material Facts, ¶ 4) The remodeling was completed in June of 2016, and Samara and Rizek incorporated FKFJ, Inc d/b/a Saraya Restaurant & Banquet. (SOF ¶ 8) Its grand opening occurred in July of 2016. (SOF ¶ 9). In September of 2016, Randy Keller approached Samara about hosting campaign election events at Saraya Restaurant; Samara agreed, and events were hosted. (SOF ¶ 10). Randy Keller was unsuccessful in his campaign.

**Construction of the Parking Lot**

In September of 2016, President Werner, Lori Zetterberg, and Samara discussed demolishing a vacant house at 7015 West 111th Street near Saraya Restaurant to create more parking. (SOF ¶ 22). In March of 2017, the demolition was complete. (Pltfs' Civil Complaint, ¶ 25, ECF 1). On July 14, 2017, Tony Kishek, owner of International Realty, and Lori Zetterberg, manager for International Realty, submitted the complete application to the Real Estate Development Board. (SOF ¶ 26).

On November 2, 2017, Lori Zetterberg as the representative and point person for International Realty, informed the Village of Worth that Rizek would no longer control the development of the parking lot. (SOF ¶ 27). International Realty wanted to ensure that the parking lot was done correctly. (SOF ¶ 28). And, from International Realty's perspective, the delay in the completion of the project was caused by Rizek. (SOF ¶ 29). Rizek had a tendency to delay filing documents and making payments. (SOF ¶ 29). Thus, International Realty became the project

2

manager. Thereafter, International Realty successfully completed the parking lot to comply with Village ordinances.

**Tickets Issued due to the Non-Compliant Parking Lot**

After the permits were obtained, the vacant building was demolished, and gravel was dumped. (SOF ¶ 23). That gravel did not comply with village of worth ordinance as a parking lot, and President Werner told Samra that on numerous occasions. (SOF ¶ 32). Despite that, customers and others began parking on the lot. As a result, on May 30, 2017, Chief Micetich issued a memo instructing his police officers to ticket cars that parked on the lot. (SOF ¶ 33). Chief Micetich solely made the decision to issue that memo; President Werner did not direct him to issue it. (SOF ¶ 34). Between May 30, 2017 and October 18, 2017, Saraya Restaurant came and said that they have no idea why the cars are parked on the lots that is the individuals parking their cars there. (SOF ¶ 36). As a result, a second memo was issued to the police to write tickets for three violations of municipal ordinances to Saraya Restaurant if vehicles parked on the lot. (SOF ¶ 37).

Under the advice of the village's attorney, Chief Micetich sent out a second memo on October 18, 2017. (SOF ¶ 37). This second memo instructed officers to ticket Saraya directly for allowing parking without the necessary permits and on a lot that did not comply with code to have parking. (SOF ¶ 37). President Werner never instructed Chief Micetich to issue these tickets to Saraya directly. (SOF ¶ 38).

Prior to the demolition of the building and the dumping of the gravel, there were no issues with the parking on the lot. (SOF ¶ 31). Following the completion of the paved parking lot, there were no additional parking tickets issued. (SOF ¶ 39).

**The Arrest of Muwafak Rizek for Unlawful Deceptive Practices**

On May 17, Officer Ferchau was dispatched to Schroder Material Incorporated for the report of Deceptive Practices related to the bounced checks. (SOF ¶ 12). A manager or another employee confirmed that Saraya wrote a check that bounced. (SOF ¶ 13). Rizek sent Schroeder a check as payment for limestone rock that bounced on March 30, 2017. (SOF ¶ 12). They attempted to deposit it on two other occasions on March 31, 2017 and April 3, 2017 and the check was returned due to insufficient funds. (SOF ¶ 12).

Thereafter, Officer Ferchau went to Saraya to speak with Rizek. (SOF ¶ 14). Rizek informed Officer Ferchau that he knew that the account did not contain sufficient funds but that he did intend on paying for the limestone. (SOF ¶ 14). Officer Ferchau returned to the Schroder Material, and Schroder was satisfied with. Rizek's promise to pay him. (SOF ¶ 15).

Prior to May 23, 2017, Schroeder informed the Village of Worth's police department that he did not receive payment from Rizek. (SOF ¶ 16). Thereafter, Officer Luburich was dispatched to Saraya café to arrest Rizek for deceptive practices. (SOF ¶ 17).

When Officer Luburich spoke with Rizek, Rizek informed him that he knew that checks were bad. (SOF ¶ 18). Thereafter, Luburich put Rizek in handcuffs. (SOF ¶ 19). Rizek then asked to if he could make payment to Schroeder, who was willing to accept payment. (SOF ¶ 19). Luburich then released Rizek from handcuffs. (SOF ¶ 19). President Werner never directed anybody to perform this arrest. (SOF ¶ 20).

### Standard for Summary Judgment

Summary judgment is properly granted when the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c). "Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary

4

materials that 'set forth specific facts showing that there is a genuine issue of material fact.'" *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1033, 1104 (7th Cir. 2008). Indeed, "to avoid summary judgment a nonmovant must produce more than a scintilla of evidence to support his position that a genuine issue of material fact exists and must set forth specific facts that demonstrate a genuine issue of triable fact." *Labouve v. Boeing Co.*, 387 F. Supp. 2d 845, 847 (N.D. Ill. 2005) (citations and quotation marks omitted). Although a court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party, "[i]rrelevant or unnecessary facts do not deter summary judgment. *Harney*, 526 F.3d at 1104. Nor can conclusory allegations alone bar a finding of summary judgment. *Perez v. Globe Ground No. Amer. L.L.C.*, 482 F. Supp. 2d 1023, 1028 (N.D. Ill. 2007). Ultimately, then, summary judgment is the "put up or shut up" moment in lawsuit. *Johnson v. Cambridge Indus., Inc.*, 353 F.3d 892, 901 (7th Cir. 2003).

**Argument**

I. **This Court must Grant Village of Worth's Motion for Summary Judgment against FKFJ on All Counts because It Cannot Prove Lost Profits**

A. **Plaintiffs' Cannot Prove to a Reasonable Degree of Certainty that It Suffered Lost Profits.**

Section 1983 claims are a species of tort liability. *Carey v. Piphus,* 435 U.S. 247, 253 (1978). "Therefore, when a § 1983 plaintiff seeks damages for violations of constitutional rights, the level of damages is generally determined in accordance with principles derived from the common law of torts as a matter of federal common law." *Kisawni v. Phoenix Security Agency,* 247 F.R.D. 554, 557 (N.D. Ill. 2008). Thus, plaintiffs must prove actual damages. *Carey,* 435 U.S. at 264.

5

FKFJ, Inc. appears to seek recovery for lost profits. "When seeking recovery of lost profits, the lost profits must be established with reasonable certainty and not be based upon speculation." *Kisawni*, 247 F.R.D. at 557. Thus, a plaintiff must bring forth evidence that establishes a reasonable basis for computing lost profits and that those lost profits were caused by the defendant. Kisawni. In other words, "lost profits cannot represent 'hopes rather than the results of scientific analysis.'" *F:A J Kikson v. Underwriters Labs., Inc.,* 492 F.3d 794, 802 (7th Cir. 2007) *quoting Zenith Elecs. Corp v. WH-TB Broad. Corp.,* 395 F.3d 416, 418 (7th Cir. 2005).

FKFJ did not provide a projected future profit. Instead, FKFJ's Corporate Rep testified that it would become profitable "because you go in and invest your money, you put your hard work and money into it. Thinking that you are going are going to be successful. You don't go in thinking that you are going to fail." (SOF ¶ 40). While those are admirable considerations, they represent "hopes rather than the results of scientific analysis." Which, again, is not surprising: FKFJ did not produce any sort of scientific or mathematical analysis or even "concrete numbers" to show their future profit expectations. (SOF ¶ 41). Further, they never retained an expert witness to calculate lost profits. (Resp. Defs Mot to Bar, ECF No. 128). Likely because FKFJ was not profitable. (SOF ¶ 42)

FKFJ's basis for lost profits, then, rests on "hopes rather than the results of scientific analysis." Thus, it is inherently speculative; and, it is not reasonably certain. Therefore, this Court must grant the Village's Motion for Summary Judgement on all of FKFJ's claims.

Even if this Court found that the testimony and records can establish to a reasonable certainty Plaintiffs' lost profits, they are barred under the economic loss doctrine. "The economic loss doctrine states that lost profits, without any claim of personal injury or damage to other property, are not recoverable in tort." *Kiswani*, 247 F.R.D. at 559 *citing Am. United Logistics Inc.*

*v. Catellus Dev. Corp.*, 319 F.3d 921, 926 (7th Cir. 2003). Thus, Plaintiffs cannot recover for their lost profits. Therefore, the Court must grant the Village's Motion for Summary Judgment on all of FKFJ's claims.

**II.     This Court must Grant All Counts against Village of Worth and President Mary Werner, in Her Official Capacity, because She is Not the Final Policy Making Official on Policing and Ticketing.**

Plaintiffs allege five counts against the Village of Worth and President Werner, in her official capacity: First Amendment Retaliation, Equal Protection Violation, Procedural Due Process Violation, Taking of Property, and Civil Conspiracy. Although Plaintiffs did not label these claims as such, they are *Monell* claims because liability can only flow to the Village through it. *See Dyson v. City of Calumet City,* 306 F. Supp. 3d 1028, 1035 (2018).

"A *Monell* claim requires that a plaintiff plead and prove that she was injured not by the unlawful actions of a municipalities' agents, but by (1) the enforcement of an express policy, (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority." *Dyson*, 306 F. Supp. 3d at 1035 *citing Estate of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509, 514-15 (7th Cir. 2007). For the third basis for Monell liability, the "inquiry is not whether an official is a policymaker on all matters for the municipality, but whether he is a policymaker in a particular area, or on a particular issue." *Valentino v. Village of South Chicago Heights*, 575 F.3d 664, 676 (7th Cir. 2009).

According to Plaintiffs, they properly pled a Monell claim because "defendant Werner, as village president, has final policymaking authority 'for licensing and policing.'" (Order on Motion to Dismiss, p. 5 ECF No. 64 citing Pl.'s Mem. In Opp'n at 8-9, ECF No. 84). This is incorrect.

Pursuant to the Village of Worth's Municipal Code, the final policy making for licensing resides with the its Board of Trustees:

7

> If, after due consideration of the information contained within the application and related investigation and inspection reports, and after considering any other evidence presented, the Clerk shall determine that the application is satisfactory, the Clerk shall forward the application to *the Village Board, who will review the application, approve it, deny it, or request additional information from the applicant or the Clerk*. If the Village Board approves an application, the Building Commissioner shall notify the applicant that the application has been approved, pending completing and passing any incomplete inspections. The license or permit shall be signed by the President, attested by the Clerk and then issued to the licensee. (Village of Worth's Approval or Disapproval of Licenses and Permits, § 3-1-4) (emphasis added).

Thus, "[t]he president of the board of trustees shall sign all commissions and permits granted by the board of trustees and grant and sign all licenses except otherwise provided by law or ordinance." (Village of Worth's Village President Duties, § 1-5-1(A)(1)). Therefore, the board of trustees has final policymaking authority as it relates to permits and license – not President Werner.

Further, the Village of Worth's Municipal Code provides the Chief of Police with final policy-making authority on policing:

> The chief of police . . . shall be responsible for the performance by the policy department of its functions, and all persons who are members of the police department shall serve subject to the orders of the chief of police. (Village of Worth's Chief of Police General Duties, § 10-1-4).

Thus, any decision relating to policing is left with Chief Micetich – not President Werner. Therefore, this Court must grant the Village of Worth and President Werner's Motion for Summary Judgment because President Werner is not the final policymaking authority on licensing or policing.

### III. This Court Must Grant Village of Worth and President Werner's Motion for Summary Judgment on the First Amendment Retaliation Claim because There is No Evidence of Retaliation.

"To maintain a first amendment retaliation claim, a plaintiff must establish (1) that she engaged in a constitutionally protected activity and (2) that the protected conduct was a 'substantial

or motivating factor' in defendants' challenged action." *Farrar v. Grochowiak*, 2005 WL 1126540, *6 *quoting Spiegla v. Hul*, 371 F.3d 928, 935 (7th Cir. 2004).

It is not disputed that the Plaintiffs decision to host campaign events for a candidate is a protected first amendment activity; and, It is not disputed that those events preceded the alleged constitutional violations. But, "the mere fact that one event preceded another does nothing to prove that the first event caused the second." *Farrar*, 2005 WL 1126540 at *7 *quoting Sauzek*, 202 F.3d 918. And, Plaintiffs will proffer no evidence that President Werner was motivated to retaliate against Plaintiffs because of their protected activity. Thus, summary judgment is properly granted.

**IV.** **This Court Must Grant Village of Worth and President Werner's Motion on the Equal Protection Count Because there is no Evidence that Their Actions were Motivated by a Discriminatory Purpose and Plaintiffs did not Identify a Similarly Situated Individual.**

**A. President Werner Did not Discriminate Against Plaintiffs because of their Race or Religion**

To sustain an equal protection claim, "[a] plaintiff must demonstrate intentional or purposeful discrimination to show an equal protection violation." *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982). "Thus, to show a violation of the Equal Protection Clause, plaintiffs must prove that defendants' actions had a discriminatory effect and were motivated by a discriminatory purpose." *Farrar v*, 2005 WL 1126540 at *5 (internal quotations and brackets removed) *quoting Chavez v. Illinois State Police*, 251 F. 3d 612, 635-36 (7th Cir. 2001).

Plaintiffs allege that they were targeted because of their "race and religion." (Pltf Complaint Para 56). Throughout this litigation, Plaintiffs have brought forth no facts to allege that Village of Worth and President Werner were motivated to cause harm to the Plaintiffs because of their race and religion. Indeed, the evidence shows that the Village of Worth and President Werner

9

sought to enforce its ordinances. Thus, the Court must grant Defendants motion for Summary Judgment

### B. Plaintiffs "Class of One" Claim Must Fail Because They Did Not Identify Any Similarly Situated Person.

A class of one claim "may arise where a plaintiff alleges that she has been intentionally treated differently than similarly situated individuals and where there was no rational basis for the disparate treatment." Here too, plaintiffs claim must fail. "A plaintiff bringing a so-called class of one claim bears the burden of proving that she has suffered intentional, irrational, and arbitrary discrimination." *Farrar*, 2005 WL 1126540 at *6. To do so, she must also identify someone who was similarly situated but treated differently. "The Seventh Circuit has imposed an especially high burden with regard to establishing someone who is similarly situated in the context of 'class of one' equal protection claims." *Farrar*, 2005 WL 1126540 at *6 *quoting McDonald v. Village of Winnekta*, 371 F.3d 992, 1003 (7th Cir. 2004).

Here, Plaintiffs failed to identify any similarly situated persons. They did not depose any person that they believed was similarly situated. At this stage of the litigation, the Plaintiffs must do more than point to their allegations. Thus, summary judgment is proper.

### V. Plaintiff's Procedural Due Process Claims Fail as a Matter of Law because they did not have a Legitimate Claim of Entitlement to the Renewal of Business License.

To establish a section 1983 claim for procedural due process, a plaintiff must identify a property interest that she was deprived. *Farrar*, 2005 WL 1126540 at *8. "For that interest to be constitutionally protected, the plaintiff must show she has a legitimate claim of entitlement to it rather than a unilateral expectation to it." *Dyson v. City of Calumet City*, 306 F. Supp. 3d 1028, 1040 (2018). In the context of the right to receive a license or permit, a plaintiff has a property interest only if a "municipal ordinance provides substantive criteria which, if met, dictate the

issuance of a permit." *Id.* at 1041 *quoting New Burnham*, 910 F.2d at 1480. If the village retains discretion to issue or renew a permit, then the plaintiff "had no more than a unilateral expectation . . . when she applied for it." *Dyson*, 306 F. Supp. 3d at 1041.

The Village of Worth retains discretion to renew a business license. The clerk is permitted to approve and execute license renewal upon determining that this chapter's standards and criteria have been met. (Village of Worth's License Term, Expiration, Renewal, and Information Changes § 3-1-6(c)). Thus, the ordinance does not provide substantive criteria that dictate the issuance of a permit, and the clerk retains discretion to issue it based on an analysis of the application. Thus, Plaintiffs did not have a legitimate claim of entitlement to the renewal of the business license.

### VI. Chief Micetich and the Police Officers are Protected by Qualified Immunity Because Probable Cause Existed to Arrest Rizek for Unlawful Deceptive Practices

Qualified immunity protects arresting police officers from suit if a reasonable officer would have believed the arrest to be lawful, in light of clearly established law, and the information that the arresting officers possessed. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). The standard "gives ample room for "mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Marks v. Carmody*, 234 F.3d 1006, 1009 (7th Cir. 2000) quoting *Hunter*, 502 U.S. at 229. If the officers had probable cause to place a defendant under arrest, then they are protected by qualified immunity. *Neumann v. Wright*, 1995 WL 616749, *5 (N.D. Ill. 1995).

Village of Worth officers placed Rizek under arrest pursuant to the Deceptive Practices Act. That Act makes it a crime for an individual to issue a check knowing that it will not be paid by the depository bank to pay for labor or services. 720 ILCS § 5/17-1(B)(d) and (e). A police officer can reasonably infer that a defendant gave the check knowingly and with the intent to

defraud if the check or other order is presented for payment and dishonored on each of 2 occasions at least 7 days apart. 720 ILCS 5/17-1(B).

The undisputed facts show that on March 30, 2017, Rizek issued a check to Schroder Material for payment for limestone rock. (SOF ¶ 12). Schroder Material attempted to deposit it on March 30, 2017, March 31, 2017, and April 3, 2017 and each time the check was returned with not sufficient funds. (SOF ¶ 12). A few weeks later, an account manager for Schroder Materials called Rizek. Rizek informed her that he would pay for the materials within a week. Rizek never showed up. (SOF ¶ 11). Thereafter, Schroeder Materials called the Village of Worth police department.

On May 17, 2017, Officer Fearchu was dispatched to investigate Schroder Materials complaint of unlawful deceptive practices related to bounced checks. (SOF ¶ 13). An employee of Schroder Materials confirmed that the check bounced. (SOF ¶ 13). He then went to Saraya Restaurant to Speak with Rizek. Rizek informed Officer Ferchau that he knew that the account did not contain sufficient funds but that he did intend on paying for the limestone. (SOF ¶ 14). Officer Fearchu returned to Schroder Materials and informed him of his conversation with Rizek, and Mr. Schroder was satisfied with Rizek's promise to pay him. (SOF ¶ 15). That did not happen. (SOF ¶ 16).

On May 23, 2017, Officer Luburich was dispatched to Saraya Restaurant to arrest Rizek for deceptive practices. (SOF ¶ 17). Rizek, again, stated that he knew that the checks were bad. (SOF ¶ 18). Thus, Officer Luburich placed Rizek in handcuffs. Rizek asked Officer Luburich if he could make a payment to Schroeder over the phone. (SOF ¶ 19). Rizek called Mr. Schroder who was willing to accept payment over the phone. *Id.* He received payment; and, Officer Luburich released him from his handcuffs. *Id.*

Rizek told employees of Schroder materials that he knew the check would bounce. Then he promised to pay it within a week. He failed to do so. When the officer arrived on May 17, Rizek once again stated that he would pay the amount owed to Schroder; he failed to do so. Thus, there was probable cause for his arrest on May 23, 2017. Even if there was not probable cause, the police officers reasonably believed that Rizek would not pay Schroder Materials. Thus, Chief Micetich and the officers are entitled to qualified immunity.

For these same reasons, the Plaintiffs' false arrest claim and false imprisonment claim must fail: Officers had probable cause to place Rizek under arrest. The existence of probable cause defeats a claim for false arrest. *Schor v. Daley*, 563 F. Supp. 2d 893, 900 (2008) ("The officers had probable cause to make the traffic stops, and Plaintiffs fail to state a claim for false arrest under Illinois law."). And, the existence of probable cause for an arrest defeats a false imprisonment claim. *Neal v. City of Harvey*, Ill, 1 F. Supp. 2d 849, 857 (N.D. Ill. 1998) ("To prove false imprisonment, a plaintiff must show that the restraint was unreasonable or without probable cause.") (internal quotations removed)

As discussed above, the Village of Worth Police Officers and Chief Micetich had probable cause to place Rizek under arrest. Therefore, this Court must grant Village of Worth's Motion for Summary Judgment on the unlawful seizure, false arrest, and false imprisonment claims.

### VII. Plaintiffs' Claim of Civil Conspiracy Fails as a Matter of Law because Solely Chief Micetich Made the Decision to Arrest Rizek and to Issue the Parking Tickets.

"To establish conspiracy liability in a § 1983 claim, the plaintiff must show that (1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Wilson v. Baptiste*, 2016 WL 521000 at *9 (2016) *citing Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015). If plaintiffs fail to identify

an agreement amongst the defendants, then summary judgment is properly granted. *Wilson*, 2016 WL 521000 at *9.

Plaintiff alleges that two agreements were made to violate his rights: "1) unlawfully seize Rizek and 2) to issue parking tickets." (Pltfs's Civil Compl., ¶¶ 70-72, ECF No 1). Chief Micetich, himself, made the decision based on his officer's investigation to arrest Muwafak Rizek (SOF ¶ 20); and, he made the decision to issue the parking tickets (SOF 34 and 38). Thus, no agreement was made and, this Court must grant the Village's Motion for Summary Judgment.

### VIII. State Abuse of Process Claim must be Dismissed because the Village of Worth and President Werner Did Not Possess an Ulterior Motive or Purpose for the Use of a Regular Court Process.

To prove abuse of process the plaintiff must show an 1) ulterior motive or purpose for the use of regular court process, and 2) a willful act in the use of the process not proper in the regular conduct of the proceeding. *Evans v. West*, 935 F.2d 922, 923 (7th Cir. 1991). There is no evidence that there was an ulterior motive or purpose for the use of the regular court process: After the tickets were issued, they were heard in an administrative proceeding. Thus, Plaintiffs cannot establish an abuse of process claim, and motion for summary judgment must be granted.

### IX. State Malicious Prosecution Claim Must be Dismissed Because There is No Evidence that Anyone Acted with Malice.

To prove a malicious prosecution claim, the plaintiff must show that 1) the defendant instituted the underlying suit without probable cause and with malice; 2) the former action was terminated in the plaintiff's favor; and 3) the plaintiff suffered a special injury beyond the usual expense, time, or annoyance in defending the underlying action. *Howard v. Firmand*, 378 Ill. App. 3d 147 (2007). This claim fails as a matter of law because the proceedings were not issued with malice. Chief Micetich explained that the tickets were issued because of violations of Village of Worth's ordinances. There is nothing to suggest that he did it with any malice.

**X.  Because Probable Cause Existed for the Arrest of Rizek this Court Must Grant the Village's Motion on Plaintiffs' Claims for Indemnification and Respondent Superior.**

As concluded, the Village of Worth's police officers had probable cause to arrest Rizek. Thus, they are shielded by qualified immunity. Because the individual officers cannot be found liable, the village of worth cannot be found liable for their conduct.

## Conclusion

FKFJ cannot support its claim for lost profits because of the economic loss doctrine. Therefore, this Court must grant Village of Worth's Motion for Summary Judgement against FKFJ in its entirety. Even if FKFJ could support its claim for damages, Plaintiffs have no evidence to support their boilerplate allegations. Consequently, this Court must grant the Village of Worth's Motion for Summary Judgment.

Respectfully submitted,

/s/ *Charles R. Vogt*_____
One of the attorneys on behalf of all Defendants

John W. Patton, Jr.
David F. Ryan
Charles R. Vogt
**PATTON & RYAN, LLC**
330 North Wabash Avenue, Suite 3800
Chicago, Illinois 60611
Tel. (312) 261-5162
Fax (312) 261-5161
cvogt@pattonryan.com